| RPD/Interrog. | Pls.' Position | Defendant's Position | Court's Ruling |
|---|---|---|---|
| <u>Requests for Production of Documents to Mayflower Healthcare Textile Services (MHTS)</u> | | | |
| <u>RPD 2</u><br>Contract(s) between Mayflower entities and Argo | A contract has been produced but not the attachment "A" reference in the agreement.  The contract says that attachment has the rates at which Mayflower will be "charged" by Argo for "labor services." The amounts "charged" are clearly relevant to plaintiffs' wage and hour claims. | This cannot be located. There seems to have been no Attachment A to the MHTS/Argo agreement. As far as Defendants know, the contract has been fully produced. Plaintiff's counsel was advised of this repeatedly. This issue should be deemed resolved. | |
| <u>RPD 3</u><br>Documents supporting formation of contract between Mayflower and Lunil. | Mayflower has now produced invoices and checks responsive to this request.  However, no other documents, such as documentation that would indicate or support how the amounts invoiced were arrived at, have been produced. | This issue should be deemed resolved. MHTS and Lunil have produced nearly 800 pages of documents to date. *e.g.,* payroll summaries, checks, and the contract itself, which is the only thing that supports formation of a contract. The "calculations" Plaintiff seeks show performance, not "formation." Nonetheless, other than what was produced, Lunil and | |

| | | MHTS have no such documents and have repeatedly advised Plaintiff of this. | |
|---|---|---|---|
| RPD 4<br>Documents that support formation of a contract between Mayflower and Argo. | A contract between MHTS and Argo has been produced but not the attachment "A" referenced in the agreement.  The contract says that attachment has the rates at which Mayflower will be "charged" by Argo for "labor services." The amounts "charged" are clearly relevant to plaintiffs' wage and hour claims.<br><br>On November 5, 2008, Mayflower produced the invoices from Argo to Mayflower, for the period of December 17, 2007, forward. Mayflower has not produced any checks from Mayflower to Argo for production workers after December 17, 2007. Objections to such production are unsupportable, given that Mayflower has invoices from, and checks to, defendant | *See* RPD 2 above. MHTS and Lunil have advised Plaintiffs some time ago that they do not have Attachment A for the MHTS/ Argo agreement.<br><br>**MHTS/Argo checks** – Defendants' counsel advised Plaintiff's counsel on 10/15/08 & 10/21/08 that 2008 MHTS to Argo checks are being requested from the bank and ***will be produced.*** Lunil and MHTS have already *twice* produced 206-07 checks (D558-566 & D 708-75 1). Defendants even ordered duplicate checks from the bank after Plaintiff's counsel found the initial production illegible. The 2008 checks to Argo ***will be produced***, they have not arrived yet from the bank. This issue should be deemed | |

| | Lunil for the period prior to December 17, 2007. | resolved. **<u>Argo Invoices</u>** Plaintiff is incorrect- on July 30, 2008, MHTS produced all ARGO/MHTS invoices from 1/2/06-12/18/07 as D 567 to D618. Also, Argo produced all ARGO/MHTS invoices dated 1/3/08 to present, and MHTS has produced all 2008 invoices it has. Thus, a *single* invoice for 1 pay period, 12/19/07 to 1/2/08, has never been located (if it exists at all), despite best efforts. Plaintiff's counsel previously was advised of this. This should be deemed resolved | |
|---|---|---|---|
| <u>RPD 5</u><br><br>Documents indicating days and hours worked by plaintiffs, including time clock records. | Mayflower has produced only "payroll summaries" for plaintiffs. Pursuant to 29 C.F.R. §§ 516.5(a) and 516.6(a)(1), Mayflower must produce the contemporaneous time records showing when plaintiffs punched-in and punched-out. If those records do | There was no L.R. 104 8.a. meeting *before* the Motion to Compel was served. Had there been, Def. counsel would have advised Plaintiffs what was stated in the 7/14/08 Opposition, in a 9/10/08 letter, and reiterated numerous times throughout – there are no other time records for | |

| | | | |
|---|---|---|---|
| | not exist, Mayflower should so state. | these Plaintiffs other than the more than 250 pages of biweekly payroll records ("payroll summaries") produced, which comply with the regulations. | |
| RPD 6<br><br>Documents concerning wages earned by plaintiffs. | These documents are all relevant to plaintiffs' claim for unpaid wages. Claims of overbreadth or burdensomeness are belied by Mayflower's production of some, but not all, of plaintiffs' records -- including some, but not all, of plaintiffs' pay stubs. No documents have been produced for Ana Zelaya, Jose Albert Mancia, and Esmeralda Hernandez. | Over 800 pages of records have been produced, and subject to what is stated elsewhere herein, Defendants believe that they have produced everything. There was confusion involving "Jose Albert Mancia" and "Albert Mancia" (aka "Miguel Mendoza"). Defendants' counsel believed these names belonged to one person. On 11/3/08 Plaintiff's counsel clarified this and advised that there are 2 people involved. Now, Lunil has checked and cannot locate any materials for "Jose" Albert Mancia. Lunil and MHTS did not employ Ana Zelaya and Esmeralda Hernandez have no records for them, and Plaintiffs were advised of this. This | |

| | | should be deemed resolved. | |
|---|---|---|---|
| RPD 15<br><br>Records regarding amounts paid by Mayflower to Lunil for recruitment, hiring and sending production workers to the Mayflower laundry. | Defendants have produced invoices from Lunil to Mayflower, and checks from Mayflower to Lunil. However, Mayflower has not produced any document demonstrating how the sums invoiced by Lunil were arrived at. | In part, this was addressed above at MHTS RPD 5, *i.e.*, MHTS /Lunil checks were produced twice, and the invoices were produced. There are no additional payment records and Plaintiff was advised of this. This should be deemed resolved. | |
| RPD 16<br><br>Records regarding amounts paid by Mayflower to Argo Enterprises, Inc., for recruitment, hiring and sending production workers to the Mayflower laundry. | Mayflower has not produced any documents showing payments to Argo for production workers subsequent to December 17, 2007, the time period covered by the contract between Mayflower and Argo.  Invoices are not documentation of payment. | This was addressed above at RPD 4-5: **Argo Invoices** – Plaintiff is incorrect- on July 30, 2008 MHTS produced all ARGO – MHTS invoices (1/2/06 to 12/18/07) as D567 to D618. Also, Argo produced all ARGO /MHTS invoices dated 1/3/08 to present, and Lunil also produced all 2008 invoices it had.  Thus a *single* invoice for 1 pay period, 12/19/07 to 1/2/08 has never been located (if such an invoice ever existed), despite best efforts and Plaintiff's counsel was previously advised of this. This | |

| | | should be deemed resolved. | |
|---|---|---|---|
| RPD 21<br><br>Plaintiffs' request for records showing all production workers who worked at the laundry during the last two pay periods of 2007 and first two pay periods of 2008. | Defendants objected that this request was "overbroad, unduly burdensome," etc. On October 21, 2008, Mayflower produced a list for the first pay period in December 2007 with 35 employees. This list appears incomplete.  The list Mayflower produced for the pay period ending December 16, 2007, includes 35 production workers, which is – literally – one half of the number of employees listed by Argo Enterprises, Inc., in response to the same request for the pay period ending two weeks later, on December 30, 2007,  which list includes 70 production workers. | MHTS has no such documents. Moreover, with respect to Lunil, this issue was resolved – Lunil produced the payroll summaries for the last two pay periods of 2007, when Lunil was phasing out of operation. Thereafter, Argo provided the workers. Thus, Lunil has no pay records for the first two pay periods of 2008, and has nothing more to produce. | |
| RPD 23<br><br>Plaintiffs' request for payroll-based tax documents, including W-2s, W-3s, 940s, 941s, and Maryland Unemployment Insurance Quarterly contribution report. | The tax forms requested demonstrate financial activity relevant to show the defendants are entities covered by the FLSA (an assertion denied by all defendants). Defendant objected that the request was | Plaintiff requested payroll tax documents for 15 individuals showing "payments made to tax authorities [for] *those individuals.*" Not all 15 were employed, but of those who were, they worked for | |

| | | |
|---|---|---|
| | overbroad, unduly burdensome, not relevant, and the tax documents "conditionally privileged." Defendant Lunil made the same objections, yet produced documents responsive to this request on October 29, 2008.  These forms are regularly maintained in the course of business and thus the production is neither burdensome or overbroad. | Lunil. Of the tax forms requested, only the W-2's (which were produced) would show "payments made to tax authorities [for] those individuals..." as requested. The other tax forms show bulk payments, not individual tax payments. Regarding the oblique argument about "financial activity" thresholds for FLSA purposes, payroll payments do not satisfy the test. The test measures the amount of *sales and receipts,* nothing on these forms show "sales and receipts" which are the criteria. *See Stout v. St. Armour Lawn Care,* 2008 WL 816818 S.D. Fl. 2008) , *2. Thus, 940/941's etc. *are irrelevant – which was one of the objections raised. Nonetheless, to resolve the issue, Lunil produced all of the tax forms requested— MHTS has no forms* |

| | | | |
|---|---|---|---|
| | | *showing payroll tax payments for these individuals because of those who were employed, they worked for Lunil.* This should be deemed resolved. | |
| <u>RPD 26</u><br><br>Plaintiffs' request for document regarding Soni Shatki and Miguel Trevino | Mayflower objected to this request as "vague" and not relevant.  It then stated it had no documents.  After the motion to compel was served, defendant produced documents regarding Mr. Shatki.  Accordingly to uncontested affidavits, Mr. Trevino supervised plaintiffs, told one plaintiff that Defendant Mukul would "buy off" plaintiffs' attorneys, and engaged in retaliatory action after the complaint was filed.  (Docket entry no. 53). Documents regarding a supervisor who engaged in retaliatory action are clearly relevant. | Documents for Mr. Shatki were produced, Defendants have repeatedly advised that there are no responsive documents for Miguel Trevino. This issue should be deemed resolved | |
| <u>RPD 28</u><br><br>Plaintiffs' request for documents regarding the legal | Mayflower first objected to this request based on privilege, relevancy, burden and | Defendant Mehta is MHTS's president and is an owner of MHTS, which is an LLC. No other | |

| | | | |
|---|---|---|---|
| status and ownership of MHTS. | overbreadth. Mayflower subsequently produced some, but not all, responsive documents, specifically refusing to produce documents that demonstrate ownership of MHTS.  These documents are relevant to determining who controls MHTS, who made decisions relevant to plaintiffs' hours and payments, and who, potentially, is an "employer" pursuant to 29 U.S.C. § 203(d). | investor has any role in MHTS, just a passive investment. Discovery of the other owners threatens MHTS's relationship with these people, and thus threatens MHTS's existence. MHTS believes it will be ruined by their disclosure. Thus, forcing MHTS to produce this information is incredibly burdensome. This was discussed during attempts to reach a compromise (which are still ongoing—**a proposed Confidentiality Order is being circulated**). Given that Mr. Mehta is the only person with an ownership interest in MHTS who is involved in its operation, MHTS asks the Court to find that the burden of this production, particularly given the interrogatory answers and 800+ pages of material already provided, outweighs the need. | |

| | | | |
|---|---|---|---|
| | | This is especially true in light of amount in controversy, where Plaintiffs' theory is they were paid straight time only, at approximately 17% less than the straight pay and overtime pay they claim is owed. Assuming *arguendo* their theory applied universally to all employees (a huge assumption), based on the total 2006-07 Lunil wages paid, the Plaintiff's *best case* alleged "pay differential" would be approximately $141,000, which does not justify the possible harm to MHTS that would result from this requested production. | |
| Requests for Production of Lunil Services, LLC | | | |
| RPD 1<br><br>Plaintiffs' request for all documents supporting formation of a contract between Mayflower and Lunil. | Lunil first objected to this request and said documents would be produced at some future time. Subsequently it produced invoices and checks relevant to this request. Defendant should be ordered to fully answer this request | This issue was discussed above, the only document showing contract "formation" is the contract. As previously advised, there are no other documents that form a contract. Contract performance documents, | |

| | or otherwise state all documents have been provided. | Lunil/MHTS checks, invoices, etc. have been produced starting in July. | |
|---|---|---|---|
| RPD 3<br><br>Documents reflecting hours worked by plaintiffs. | Lunil listed numerous objections to this request and stated document "will be produced." Subsequently, it produced "payroll summaries" for plaintiffs.  All defendants have admitted that Mayflower laundry employees punched-in and punched-out on a time clock. Pursuant to 29 C.F.R. §§ 516.5(a) and 516.6(a)(1), Lunil must produce the contemporaneous time records showing when plaintiffs punched-in and punched-out. If these records do not exist, Lunil should be required to so state. | There was no L.R. 104 8.a. meeting before the Motion to Compel was served. Had there been, Defendants would have advised Plaintiffs what was stated in their 7/14/08 Opposition, in a 9/10/08 letter, and reiterated numerous times throughout – there are no other Lunil time records for these Plaintiffs other than the more than 250 pages of biweekly payroll records ("payroll summaries") produced, which comply with the  regulations. This issue should be deemed resolved. | |
| RPD 4<br><br>Documents regarding wages earned by plaintiffs. | These documents are all relevant to plaintiffs' claim for unpaid wages. Claims of overbreadth or burdensomeness are belied by Lunil's production of some, but not all, of plaintiffs' records. | Over 800 pages of records were produced. Subject to what is stated elsewhere herein, Defendants believe that they have produced everything.  As explained above, there was confusion | |

| | | | |
|---|---|---|---|
| | No documents have been produced for Ana Zelaya, Jose Albert Mancia, and Esmeralda Hernandez. | involving "Jose Albert Mancia" and "Albert Mancia" (aka "Miguel Mendoza") that Plaintiff's counsel has now clarified. Lunil has checked and cannot locate any materials for "Jose" Albert Mancia. Lunil and MHTS did not employ Ana Zelaya and Esmeralda Hernandez, and have no such records and advised Plaintiffs counsel of this repeatedly. | |
| RPD 8 <br><br> Request for personnel file of all plaintiffs. | Responsive documents have yet to be produced for plaintiffs Obdulia Martinez, Sandra Suazo, Mayra Reyes a/k/a/ Tamaris Avila, Ana Zelaya, Jose Zelaya, Jose Albert Mancia, Joel Carias and Esmeralda Hernandez. | Obdulia Martinez; Ana Zelaya; Esmeralda Hernandez were not employed by Lunil and no files exist. Personnel files for Jose Zelaya, Sandra Suazo and Mayra Reyes, "Jose" Albert Mancia cannot be located. However, Miguel Mendoza's (aka Albert Mancia ) file was produced 6/11/08 – D 499-D 507; Joel Carias' file was produced at D 655 – D659. This issue should be deemed resolved. | |

| | | | |
|---|---|---|---|
| RPD 12<br>Records regarding amounts paid by Mayflower to Lunil for recruitment, hiring and sending production workers to the Mayflower laundry. | Defendants have produced invoices from Lunil to Mayflower, and checks from Mayflower to Lunil. However, Lunil has not produced any document demonstrating how the sums invoiced by Lunil were arrived at. | As stated above, Plaintiffs were repeatedly told that no documents demonstrating calculations / derivations exist (See Mayflower RPD 3, above). This issue should be deemed resolved. The other records were produced as described above. | |
| RPD 17<br><br>Plaintiffs' request for records showing all production workers who worked at the laundry during the last two pay period of 2007 and first two pay periods of 2008. | Defendants objected that this request was "overbroad, unduly burdensome," etc. On October 21, 2008, Lunil produced a list for the first pay period in December 2007 with 35 employees. That list appears incomplete.  The list Lunil produced for the pay period ending December 16, 2007, includes 35 production workers, which is – literally – one half of the number of employees listed by Argo Enterprises, Inc., in response to the same request for the pay period ending two weeks later, on December 30, 2007,  which list includes 70 production workers. | This issue was resolved (and addressed above at MHTS RPD 21)– Lunil produced the payroll summaries for the last two pay periods of 2007, when Lunil was attempting to phase out of operation. Following this, Argo provided the workers. Thus, Lunil has no pay records for the first two pay periods of 2008, and there are none to produce. This issue should be deemed resolved. | |

| | | | |
|---|---|---|---|
| RPD 19<br><br>Plaintiffs' request for payroll-based tax documents, including W-2s, W-3s, 940s, 941s, and Maryland Unemployment Insurance Quarterly contribution report | The tax forms requested demonstrate financial activity relevant to show the defendants are entities covered by the FLSA (an assertion denied by all defendants). Defendant objected that the request was overbroad, unduly burdensome, not relevant, and the tax documents "conditionally privileged."  On October 29, 2008, Lunil produced the documents responsive to this request for the pay periods from July 1, 2006, through December 31, 2007. However, the documents for pay periods subsequent to December 31, 2007, have not been produced. | *See* MHTS RPF 23, above. Plaintiff requested payroll tax documents for 15 individuals showing "payments made to tax authorities [for] those individuals." Not all 15 were employed, but of those who were, they worked for Lunil. Of the forms requested, only the W-2's (which were produced) would show "payments made to tax authorities [for] those individuals" as requested. The other tax forms show bulk payments, not individual tax payments  for individuals. Regarding these tax forms' relevance to "financial activity" for FLSA purposes, the amount of payroll payments does not satisfy the test. FLSA | |

| | | applicability is not shown by undefined "financial activity" but by *sales and receipts* at the $500K level - nothing on these forms show "sales and receipts" which are the critera. *See Stout v. St. Armour Lawn Care,* 2008 WL 816818 S.D. Fl. 2008) *2. Thus, 940/941's etc. *are irrelevant – which was one of the objections raised.*<br><br>*Nonetheless, to resolve the issue, Lunil produced all of the tax forms requested.* | |
|---|---|---|---|
| <u>RPD 22</u><br><br>Documents showing the relationship between Miguel Trevino and Lunil. | Lunil objected that these documents were not relevant and the request was "vague and overbroad" etc. Accordingly to uncontested affidavits, Mr. Trevino supervised plaintiffs, told one plaintiff that Defendant Mukul would "buy off" plaintiffs' attorneys, and engaged in retaliatory action after the complaint was filed.  (Docket entry no. 53). | Documents for Mr. Shatki were produced, Defendants have repeatedly advised that there are no responsive documents for Mr. Trevino. This issue should be deemed resolved. | |

| | Documents regarding a supervisor who has engaged in retaliatory action are clearly relevant. | | |
|---|---|---|---|
| <u>Requests for Production of Documents to Defendant Mukul Mehta</u> | | | |
| <u>RPD 1</u><br><br>Request for W-2, K-1 and other documents showing sources of earning income from 2005 to present. | These documents are relevant to demonstrating the control and authority Mr. Mehta exerted/exerts over defendants MHTS and Lunil, and to demonstrate that Mr. Mehta is a statutory "employer" under federal and state law, and therefore subject to this Court's jurisdiction under the FLSA. Defendant has denied all of the preceding assertions. The need for these documents trumps any "conditional privilege" asserted by Mr. Mehta, as plaintiffs can not otherwise obtain this information. | Plaintiffs have argued that Mehta' s personal tax returns show (1) FLSA "financial activity", and (2) control. As to item (1), *Brock v. Hamad,* 867 F2d 804, 809 (4th Cir 1989) states the dollar threshold "focuses on the volume of sales made or business done, ***not an individual's share of profits derived from the enterprise.***" Thus, individual returns are inappropriate and irrelevant to show the requisite type of financial activity. Regarding (2) "control"- tax returns do not show day-to-day operational control of anything. Moreover, as the numerous authorities cited at | |

| | | Def.'s *Amended Opposition* (Exhibit 5 of Paper 42, p. 24, n. 3 ) indicate, particularly where there is no punitive damage claim, federal courts hold there **_is_** a qualified privilege protecting the returns. To obtain individual tax returns, the courts require a showing that (1) the returns are relevant (2) and there is a compelling need for them because information cannot be readily obtained elsewhere. As stated above, the returns are not relevant to show control, and proof of control (or lack thereof) could be determined by deposition easily. | |
|---|---|---|---|
| <u>RPD 2</u><br><br>Request for Mr. Mehta's books, calendars, date book and other documents demonstrating business meetings and appointments from 2005 to the present. | Mr. Mehta first listed numerous objections to this request, including that it was not relevant, and that the request was "overbroad and unduly burdensome, in that it seeks a large volume of information" defendant deemed irrelevant.  After the motion to compel was served, Mr. | 2005 to 2007 calendars do not exist. Mr. Mehta "calendared" his meetings using note cards, which he made and disposed of as the event noted passed. There is no other organized means by which to retrace his appointments and meetings during that time. This s a laundry with a very | |

| | | Mehta stated that he disposed of his calendars at the end of 2006 and 2007. However, this request required defendant to produce any document responsive to this request. | small administrative staff which, unlike law firms or large corporations, does not require documenting meetings. Searching through other files to locate extraneous information that might reflect a meeting (*e.g.,* a customer meeting about a bill, etc.) is burdensome because (1) if any such meeting was in fact documented, such information would have been on the note cards which no longer exist, and not likely to be marked elsewhere, randomly; (2) this request would require searching several file cabinets of customer invoices and would be (3) extremely unlikely to yield "meeting" documents sought anyway, much less anything relevant to the issues here; and, (4) would deprive the laundry of productivity of the | |

| | | single person who would have to conduct the random search, whose energies are needed elsewhere to perform his responsibilities at the laundry. | |
|---|---|---|---|
| Production of Documents to Argo Enterprises, Inc | | | |
| RPD 2<br><br>All documents that support formation of contract between Argo and Mayflower, and all records that reflect terms of that agreement. | While Argo has provided the contract between Argo and Mayflower, it has not provided any copies of checks or other documents to show that Mayflower has paid Argo for the invoices produced. Further, Argo has not produced any documentation to support the amounts it has invoiced Mayflower for the "provision of labor services." | This cannot be located. There seems to have been no Attachment A to the MHTS/Argo agreement. As far as Defendants know, the contract has been fully produced. Plaintiff's counsel was advised of this repeatedly. This issue should be deemed resolved. | |
| RPD 3<br><br>Plaintiffs' request for all documents reflecting the hours worked by plaintiffs. | Defendant has provided "payroll summaries" for most of the listed individuals.  No responsive documents have been produced for payroll periods subsequent to April 20, 2008.  Argo has not produced the | The payroll summaries provided list all worked by named Plaintiffs. The payroll summaries reflect all time recorded by the time-clock. | |

| | records generated by the time clocks on which plaintiffs and other laundry employees are required to punch-in and punch-out. These records are obviously relevant to a wage and hour claim and are required to be maintained pursuant to 29 C.F.R. §§ 516.5(a) and 516.6(a)(1). | | |
|---|---|---|---|
| RPD 4<br><br>Plaintiffs' request for all documents regarding wages earned by plaintiffs, including paychecks and paystubs. | With the exception of photocopies of eight paychecks, Argo has not produced documents responsive to this request.  Argo's assertion that it has produced all responsive documents in its possession is not credible. | Argo simply does not have any more documents responsive to this request. | |
| RPD 6<br><br>All documents that that support Argo's Answer and Affirmative Defenses, or otherwise support the contention that Argo is not liable to plaintiffs as alleged in the Complaint. | Argo previously stated that all responsive documents were provided to plaintiffs on or about June 13, 2008. Since that date, Argo has continued, in piecemeal fashion, to provide documents responsive to this request.  Plaintiffs now have been | Argo has produced all records in its possession, custody and control supporting Argo's position that Plaintiffs have been paid for all hours worked, including overtime at the proper hourly rates. Argo has supplemented its response to the extent that it has | |

| | | | |
|---|---|---|---|
| | provided with an agreement between Argo Enterprises, Inc. (the defendant) and Argo Management, Inc., regarding the provision of services by Argo Enterprises to Argo Management.  That agreement refers to an exhibit which is not attached.  Further, plaintiffs have been provided with invoices from Argo Enterprises, Inc., to Argo Management, Inc., but not documentation to support those invoices, or, documents to indicate that those invoices have been paid.  Given Argo's denials, *inter alia*, that plaintiffs' are owed any wages, its denials that this Court has subject matter jurisdiction, and its denials that it Argo an "employer" pursuant to the Fair Labor Standards Act, Argo must be required to supplement its response. | discovered additional documents, in accordance with the rules of this Court.  The exhibit that Plaintiffs refer in the services agreement between Argo Management and Argo Enterprises simply does not exist. | |
| RPD 12

All documents, | Argo has not produced any checks or other | Argo has produced its invoices to Mayflower.  It | |

| | | | |
|---|---|---|---|
| including invoices, checks and calculations, showing amounts paid by Mayflower to Argo. | documents showing payments by Mayflower to Argo for the amounts Argo has invoiced Mayflower for the provision of laborers. | simply does not have any further documents. | |
| <u>RPD 19</u><br><br>Plaintiffs' request for payroll-based tax documents, including W-2s, W-3s, 940s, 941s, and Maryland Unemployment Insurance Quarterly contribution report. | On November 3, 2008, Argo produced the Maryland Unemployment contribution report for the 2nd quarter of 2008 and the 941 for the 2nd quarter of 2008.  On November 5, 2008, Argo produced the 941 for the 3rd quarter of 2008. Argo has stated it will provide the other documents requested but has not yet done so. | | |
| <u>RPD 25</u><br><br>Plaintiffs' request for documents reflecting the legal status and ownership of Argo Enterprises, Inc. | While Argo has produced some documents responsive to this request, it has not produced any documents regarding the ownership of Argo. | Argo has responded in Answer to Interrogatory No. 3. Argo does not have any documents regarding its ownership that have not been produced. | |
| <u>Interrogatory No. 3</u><br><br>This interrogatory asks Argo to list its officers and directors, the nature of its business, the | Argo partially answered this interrogatory.  It failed to state the addresses where it conducts business (apart from its main | Argo answered as follows:<br><br>Argo Enterprises, Inc. is located at 600 Reisterstown Road, Suite Lobby 4, | |

| | | | |
|---|---|---|---|
| locations and addresses where it conducts business, and the managerial and supervisory staff at each place of business operations. | office), and the managerial and supervisory staff at each place of business operations. | Baltimore, Maryland 21208. Valentin Abgaryan is President of Argo. Argo is in the business of providing workers for Mayflower's laundry facilities.<br><br>By way of further response, Argo has no other business locations.  Argo does not have any supervisory employees at the Mayflower Laundry. | |

F:\wDocs\cLIENTS\manCIA.GLE\Revised Matrix - Nov 11 FINAL .doc