**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND
(Northern Division)**

| | | |
|---|---|---|
| GLENDA MANCIA, *et al.* | * | |
| | * | |
| Plaintiffs, | * | |
| | * | |
| v. | * | Civil Action No. 1:08-CV-00273-CCB |
| | * | |
| MAYFLOWER TEXTILE | * | |
| SERVICES, INC., *et al.* | * | |
| | * | |
| Defendants. | * | |

_____

<u>MOTION  TO  COMPEL  DEFENDANTS  ARGO  ENTERPRISES INC.,  ARGO
MANAGEMENT  GROUP,  INC.,  AND  VALENTIN  ABGARYAN  TO  PRODUCE
DOCUMENTS  AND   MEMORANDUM  IN  SUPPORT  THEREOF</u>

COME NOW Plaintiffs, through undersigned counsel, and respectfully file this Motion to

Compel Defendants Argo Enterprises, Inc., Argo Management Group, Inc., and Valentin

Abgaryan (collectively referred to as "the Argo defendants") to respond to plaintiffs' request for

production of documents.

This litigation involves plaintiffs' claim to unpaid overtime premium under the Fair

Labor Standards Act.  Since service of document requests in April 2008, plaintiffs have been

attempting to get basic time and pay records from the Argo defendants, records which these

defendants are required by law to maintain, as well as records regarding the contractual

relationship between the two sets of defendants – the "Mayflower defendants" and the "Argo

defendants."

The March 2009 deposition testimony of the Argo defendants demonstrates that they

have consciously refused to produce documents that have been requested, and have intentionally

1

hid discoverable information from plaintiffs.  That testimony also demonstrated that the Argo defendants have created computer-generated time and pay records, for some plaintiffs and opt-ins, as defendants see fit, in piecemeal fashion, causing plaintiffs counsel to spend enormous amounts of time just trying to figure out what records have been produced and what records likely exist, but have not been produced by defendants.

The Argo defendants have continually stated that they do not have additional responsive documents, only to produce additional documents after being pressured to do so, or, after subsequently admitting that additional responsive documents exist.  They have denied employing individuals who have opted-in to this action, even after plaintiffs have produced pay records showing they worked for Argo.  The Argo defendants' actions demonstrate that they will not comply with discovery requirements absent court order.

I.    Background

 Plaintiffs bring claims under federal and state statutes requiring the payment of overtime wages for hours worked in excess of 40 hours in any one work week.  Plaintiffs are or were hourly employees who worked at the Mayflower commercial laundry located at 1350 Brass Mill Road, Belcamp, MD 21017, in Harford County.  The Court authorized the case to proceed as a collective action (docket number 54) and ordered defendants to provide plaintiffs' counsel with the names and addresses of possible opt-ins.  A prior discovery dispute resulted in a joint report to the Court and the Court's order regarding additional discovery (docket number 69).

Plaintiffs' request for production of documents was served on Argo Enterprises, Inc., on April 18, 2008.  After plaintiffs filed a motion to compel, defendants served a response on September 11, 2008.  Plaintiffs' requests for production of documents were served on Argo Management Group, Inc. and Valentin Abgaryan on February 6, 2009.  These defendants have

Case 1:08-cv-00273-CCB   Document 101   Filed 05/15/09   Page 3 of 12


not served any document purporting to be a response to those requests.

The focus of those requests are documents regarding the hours worked by plaintiffs and opt-ins, the wages earned by them, and the relationship between the various defendants. Those requests directly address the liability and damages issues involved in an FLSA matter. These requests are attached hereto as Exhibits 1, 2, and 3.

The Argo defendants have produced documents on the following dates: June 13, 2008; June 24, 2008; August 14, 2008; September 24, 2008; October 23, 2008; November 3, 2008; November 5, 2008; March 12, 2009; March 17, 2009; March 18, 2009; April 7, 2009,[1] April 8, 2009; May 6, 2009; and May 14, 2009. Attached hereto as exhibit 4 is a listing of the documents produced by the Argo defendants.[2] As that exhibit demonstrates, defendants possess information which they have produced in bits and pieces over the life of this litigation. The Argo defendants' deposition testimony[3] and a review of the documents produced indicate that defendants have consciously not complied with discovery requirements. A few examples follow.

One area of inquiry is the relationship between defendant Mayflower Healthcare Textile Services ("MHTS" or "Mayflower") and the Argo defendants. The Argo defendants provide laborers to work in the Mayflower laundry. Mayflower pays Argo a fee for each employee. Argo then pays the employees. The document requests that have been served on defendants have asked for all documents related to the contractual relationship between these entities. Argo

---

[1] The documents produced on that date had been previously produced.

[2] Plaintiffs placed the bate-stamped numbers that appear on the left-hand margin of the list and on the bottom of the documents. It is undersigned counsel's practice to do so in order to keep track of what documents defendants have produced.

[3] The corporate designee for Argo Enterprises, Inc. and Argo Management Group, Inc. was Valentin Abgaryan, who is also an individual defendant.

previously stated to the Court that it has produced all documents that reflect the terms of the

contract between MHTS and Argo.  See docket number 69 at page 20.  However, that statement

was not true.  The following is an excerpt from the Argo defendants' deposition.[4]  The

defendants are being questioned about three different deposition exhibits – exhibits numbers 37,

38, and 39-- each purporting to show plaintiff Avalos' pay rate.

Counsel first showed deposition exhibits 37 and 38 to the defendants.

> Q.    Is [exhibit] 37 essentially the finished version of [exhibit] 38?
>
> A.    Absolutely correct.
>
> Q.    And is correct to say that both documents indicated that Mirta Avalos has a rate, regular hourly rate of $6.05 per hour.
>
> A.    Yes.
>
> Q.    Now, if you look at document number 39, this document also involves plaintiff Avalos.  The second to last column indicates a rate per hour of $9.50.  Can you please explain this document?
>
> A.    I can answer now?
>
> Q.    Yes.
>
> A.    I hardly believe I provided you with this document, because I was concealing deliberately from you the rates I was getting from MHTS.  This includes the amount MHTS pays for her to me.  I didn't give you that document.  It's your culprit.
>
> Q.    Reviewing document number 40, the second to last column is rate per hour.  It indicates for Nuvia Gonzalez $9.50 per hour, Henri Sosas $10.50 per hour, and Miguel Mendoza $10 an hour.  Is it accurate to say that those are the rates for each of those individuals for which you were billing MHTS?

---

[4] All excerpts from the Argo defendants' depositions and deposition pages otherwise referenced in this motion are attached hereto in Exhibit 5.

A.      Yes.  I have a spy infiltrated at headquarters.

Deposition transcript at pp. 353-355.

As the preceding demonstrates, the Argo defendants consciously withheld relevant and responsive information regarding the contractual relationship between defendants from plaintiffs.

The following is another example.  Plaintiffs' document requests required defendants to produce all documents regarding the hours worked by plaintiffs and opt-ins.  During the first day of defendants' depositions, defendants revealed that they receive from MHTS, by computer, a report of hours worked by employees at the Mayflower laundry, and that based on this report, Argo generates invoices to MHTS.  These reports from MHTS contain information about the hours worked by plaintiffs, and are directly relevant to plaintiffs' claim for overtime wages. These reports had not been produced.  Before the end of the first day of the Argo depositions, plaintiffs requested that defendants produce these responsive documents at the second day of depositions.   The following exchange, at the start of the second day of the Argo depositions, demonstrates defendants' continuing refusal to comply with discovery requirements:

Q.      . . . [I]s it correct that you have produced invoices
from Argo Management Group to MHTS?

A.      Yes.

Q.      And the dates on these documents from first glance
appear to be from January 3rd, 2008 to March 13th, 2009?

A.      The first glance, the second, the ninth, the tenth,
whichever ones.

Q.      These invoices that you produced this morning,
when were these printed?

A.      Last night.

Q.      Did you print them?

A.      No.

Q.      Who did?

A.      The printing machine.

* * * * * *

Q.      Mr. Abgaryan, is it correct that the documents in Exhibit Number 20 you produced this morning?

A.      Yes.

Q.      Okay.  When were these documents printed?

A.      Last night.

Q.      Did you print them?

A.      Yes.

Q.      Can you tell me what these documents are?

A.      Those are time sheets.  They're excerpts from time sheets.

Q.      What do you mean they're excerpts from time sheets?

A.      Time sheet is a little bit longer, so it's -- those are for the individuals that you, Mr. Katz, were interested in.

Q.       . . . [T]he information that is on these records, where did you, how did you receive that information.

A.      Well, that is based on the information, the time sheets that as I explained . . . yesterday. . .  I get them from MHTS and based on these time sheets I calculate the compensation.

Q.      [T]he time sheets that you receive from MHTS, are they on your computer.

A.      Yes.

6

> Q.    The instruction and the requirement is that the
> information that is on Mr. Abgaryan's computer that contains this
> time be produced.  The instruction, the document request, and what
> plaintiffs believed to be the agreement we had yesterday, is that the
> information would be produced as it existed on Mr. Abgaryan's
> computer, and not that the information would be edited by the
> witness prior to production.
>
> A.    Nobody can instruct me what to do with my papers.
> These are my documents and I will do as I please.

Deposition at pp. 190-194.

Similarly, the March 2009 depositions revealed that the Argo defendants had not

complied with the requirement that they provide to plaintiffs the names and addresses of all

potential opt-ins.  For the Court's convenience, attached hereto as Exhibit 6, is deposition exhibit

31, which is the list of names and addresses of employees provided by Argo in response to the

Court order that this case proceed as a collective action.  Attached as Exhibit 7 are the first three

pages of deposition exhibit 32.  These three pages cover the payroll period of December 31,

2007, through January 13, 2008.  The payroll summaries, of which exhibit 6 is one, were not

produced until March 18, 2009, the third day of the Argo defendants' deposition.

> Q. . . . Is it correct that on Exhibit 31 do not appear the
> names of numerous employees who appear on the first payroll
> summary report which is part of Exhibit 32?
>
> A.    Naturally so.
>
> Q.    And why is that?
>
> A.    Because this is just, number 31 is just Argo
> Enterprise and number 32 is combined for Argo Enterprises and
> Argo Management Group.  So hence in [number 31] you don't
> have Argo Management Group.
>
> Q.    [Directed to Neil Hyman, counsel for the deponent]
> Neil, will you agree to provide the plaintiffs the names and
> addresses for all the employees who names appear on the payroll

summaries which comprise Exhibit number 32, so they can be sent
notices of this collective action, as they may be eligible to
participate in this litigation.

Mr. Hyman:    It's not coming from me.

Witness:        Even if you agree, I disagree.  Especially
since I witnessed how easily my document that I produce in a
confidential manner vanish.  I am not referring to Mr. Katz but I
really do not want some stranger digging into my private papers.

Deposition at pp. 334-335.

In sum, on March 19, 2009, five months after the Court granted collective action status,

defendants admitted that they had been hiding the names and addresses of some 107 potential

opt-ins.

Another example of the Argo defendants' piecemeal discovery responses follows.  In the

discovery submission to the Court, Argo stated that it had produced all documents responsive to

plaintiffs' request for "all documents regarding wages earned by plaintiffs, including paychecks

and paystubs."  Docket entry number 69 at page 21.  However, that was not true.  On March 12,

2009, just before defendants' depositions, defendant produced payroll documents regarding

plaintiffs and opt-ins Maritza Guevara, Ada Sosa, Joel Carias, Nuvia Gonzalez, and Henri Sosa,

all of whom had been parties in this lawsuit since no later than June 2008.  The records produced

on March 12, 2009, demonstrate that these defendants have responsive information, but will

produce documents only as they see fit.  For example:  documents 197, 198, and 199 (attached

hereto as Exhibit 8) list certain plaintiff and opt-ins, with net amounts of checks they received for

certain two-week periods.  However, the payroll information defendants are required to produce

includes the gross pay received by these employees, for that is at issue.  The net amount of the

checks plaintiffs received is not relevant.

Plaintiffs have requested all documents reflecting the days and hours worked by all plaintiffs and opt-ins (exhibit 1, request number 3; exhibit 2, request number 5).  Plaintiffs have requested all documents concerning the wages paid to plaintiffs and opt-ins, including paychecks and paystubs (exhibit 1, request number 4; exhibit 2, request number 6).  Defendants have not provided this information, even though their deposition testimony confirms that they have it.

Instead, defendants have created computer-generated reports which provide partial information about some plaintiffs and opt-ins.  For example, attached hereto as Exhibit 9 are defendants' documents 428-431.  The documents produced regarding Ana Vargas and Yolanda Mejia do not show what hours they worked on each day.  Those documents only provide a summary statement of how many hours each worked in a pay period.[5]   In addition, defendants are required to provide all payroll information.  The "Employee QuickReport" provided demonstrates only the net payment received by these opt-ins for the pay periods referenced.  The net pay is not the basis upon which any claim of nonpayment of overtime wages is based.

By the conclusion of the Argo defendants' deposition, they had agreed to provide numerous documents, including, but not limited to, the following:  Argo Enterprise and Argo Management Group, Inc.'s tax return for 2007 and 2008 (deposition at pp. 91-92); documents regarding opt-in Thaddeus Norris (deposition pp. 127-128); time records transmitted by MHTS to Argo (deposition pp. 150-153); any time sheets (deposition at p. 212); W-2s for plaintiffs, 1099s for opt-in Joel Carias and Mirta Avalos (deposition at p. 216); W-2s and 1099s for any other plaintiff or opt-in (deposition at p. 260); a list of any individual transferred by defendant Argo between the Baltimore and Belcamp Mayflower laundries (deposition at p. 262-263); and

---

[5] As overtime compensation is based on hours worked within any one week, defendants are required to produce hours worked and pay received for each work week.

finally, a list of documents that the Argo defendants believe they have produced in discovery (deposition at p. 278).

None of these documents have been produced.

Plaintiffs' counsel has engaged the Argo defendants over the life of this litigation to secure discoverable documents.  After the March 2009 depositions, plaintiffs again attempted to resolve this dispute without Court intervention.  On April 22, 2009, plaintiffs counsel wrote the Argo defendants, identifying 15 plaintiffs and opt-ins for whom defendants had not produced all or many of the relevant documents likely in defendants' possession.  That letter is attached hereto as Exhibit 10.  In response, the Argo defendants provided the four pieces of paper that constitute exhibit 8, regarding opt-ins Vargas and Mejia, and denied that they employed the other 13 individuals.  See exhibit 11, May 6, 2009, e-mail from Argo counsel.

The Argo response further demonstrated that the Argo defendants refuse to comply with discovery.  The other 13 names were included in plaintiffs' counsel's April 22, 2009, correspondence because: (1) plaintiffs had already provided defendants with documentary proof, such as paystubs, that these individuals had been paid by Argo, and/or (2) these individuals' names appear on the list of employees that Argo previously provided to plaintiffs (exhibit 6 to this motion).

After receiving those four documents on May 6, 2009, plaintiff's counsel's sent an e-mail, that same day, attached hereto as exhibit 12, again urging the Argo defendants to produce documents in their possession, and pointing out the lack of credibility in defendants' assertions that they did not possess additional discoverable documents.  In response, on May 14, 2009, the Argo defendants produced documents 431-435, which are attached hereto as exhibit 13.  Again, these are simply listings of the net amounts of checks received by some plaintiffs or opt-ins, for

whom the Argo defendants said, just one week earlier, that they had no documents.  These reports, apparently generated on the afternoon of May 8, 2009, do not detail the actual wages earned by the individuals referenced in the reports.

Once again, the Argo defendants have demonstrated that, absent court order, they will continue to attempt to frustrate plaintiffs' attempts to secure discovery, and continue to cause plaintiffs' counsel to spend unnecessary hours in discovery disputes.

Plaintiffs pray that the Court grant this motion, and order the Argo defendants to fully respond to plaintiffs' document requests within 10 days of the date of any Court order.  Plaintiffs further pray that the Court order the Argo defendants, jointly and severally, to pay plaintiffs' attorney's fees for the prosecution of this motion.

<u>Summary</u>

The Argo defendants have demonstrated that they have intentionally refused to comply with discovery requirements, and that absent Court order, they will continue to do so.  Plaintiffs pray that the Court enter an order requiring the Argo defendants to fully answer outstanding discovery.  Plaintiffs further pray that, given the wholly obstructionist behavior of these defendants, that the Court order these defendants to pay plaintiff's attorney's fees for the prosecution of this motion.

A proposed order is attached hereto.

Respectfully submitted,

ANDALMAN & FLYNN, P.C.


_____/s/_____
Daniel A. Katz, Esquire, Fed. Bar No. 13026
8601 Georgia Avenue, Suite 604
Silver Spring, MD  20910
(301) 563-6685


BROWN, GOLDSTEIN & LEVY, LLP


_____/s/_____
C. Christopher Brown, Fed. Bar No. 01043
Jane R. Flanagan, Bar No. 28249
120 E. Baltimore St., Suite 1700
Baltimore, MD  21202
(410) 962-1030

*Attorneys for Plaintiffs*

<u>CERTIFICATE OF SERVICE</u>

I hereby certify that on this 15th day of May, 2009, a copy of the foregoing was served by the Court's electronic filing system to: Neil S. Hyman, Esq., 4416 East West Highway, Suite 400, Bethesda, MD  20814; Andrew T. Nichols, Esq., 410 N. Charles Street, Baltimore, MD 21201; and Scott V. Kamins, Esq. and Eric Pelletier, Esq., 8171 Maple Lawn Boulevard, Suite 200, Maple Lawn, MD  20759.


_____/s/_____
Daniel A. Katz

F:\WDocs\CLIENTS\MANCIA.GLE\pleading\Motion to Compel Argo 2.doc